PUBLISH

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

No. 97-8737

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
08/26/98
THOMAS  K. KAHN
CLERK

D.C. Docket No.  CV294-179

WILLIAM COHEN,

Plaintiff-Appellee,
Cross-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Appellant,
Cross-Appellee.

Appeals from the United States District Court
for the Southern District of Georgia

**(August 26, 1998)**

Before CARNES and HULL, Circuit Judges, and HENDERSON, Senior
Circuit Judge

CARNES, Circuit Judge:

While incarcerated in a minimum security federal prison, Plaintiff William Cohen was injured when he was attacked by another prisoner. He sued the United States under the Federal Tort Claims Act asserting that the Bureau of Prisons had negligently assigned his attacker to a minimum security prison. After a bench trial, the district court entered judgment for Cohen and awarded him $250,000. Because we conclude that the discretionary function exception to the Federal Tort Claims Act shields the United States from liability in this case, we reverse that judgment.

## I. BACKGROUND

In 1991, Cohen was sentenced to eighteen months in prison for copyright violations. The Bureau of Prisons ("BOP") classified him as "security level 1," the lowest security classification in the federal correction system, and it placed him in the minimum security Community Corrections Center at the Jesup, Georgia Federal Corrections Institution. On February 8, 1992, Cohen was watching television in a common area of the prison. When Humberto Garcia, one of the other inmates, changed the channel, Cohen objected and changed the television back to its original channel. Later, after all the other inmates had left the room, Garcia picked up a metal chair and repeatedly beat Cohen on the head.

2

As a result of Garcia's attack, Cohen underwent neurological surgery and spent three weeks in the hospital. Since his hospitalization, Cohen is unable to walk normally, suffers from severe headaches, has permanent short-term memory problems, and has lost his sense of taste and smell. After exhausting his administrative remedies, Cohen filed a claim against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq., alleging that the government's negligence was responsible for his injuries. After a bench trial, the district court entered judgment in favor of Cohen, rejecting the government's arguments (1) that the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a) barred Cohen's FTCA claim and therefore deprived the district court of jurisdiction, and (2) that the BOP had not been negligent. The court awarded Cohen $250,000 in damages.

The United States appeals, challenging the district court's legal conclusion that the discretionary function exception did not apply, and its factual finding that the BOP was negligent. Cohen cross-appeals, seeking increased damages.

## II. STANDARD OF REVIEW

3

We review a district court's legal conclusion de novo and its fact findings for clear error. See, e.g., Lykes Bros., Inc. v. United States Army Corps of Eng'rs, 64 F.3d 630, 634 (11th Cir.1995).  Whether the United States is entitled to application of the discretionary function exception to the FTCA is a question of law we review de novo. See Ochran v. United States, 117 F.3d 495, 499-500 (11th Cir. 1997).

### III.  DISCUSSION

Cohen's theory of liability is that the BOP was negligent in classifying Garcia as "security level 1," the lowest security classification in the federal correction system, and placing him at the minimum security Jesup institution. According to Cohen, had Garcia been assigned  a higher security level as allegedly warranted by his criminal history, Garcia's attack and Cohen's injuries would not have occurred.  The Government contends that it cannot be held liable for any alleged negligence in determining Garcia's custody classification because the prisoner custody classification process performed by the BOP falls within the FTCA's discretionary function exception, 28 U.S.C. § 2860(a). Cohen first responds that the discretionary function exception does not apply to the BOP's classification of prisoners because 18 U.S.C. § 4042 establishes a

4

non-discretionary duty of care on the part of the BOP toward prisoners which removes any discretion the BOP might otherwise have in this regard. In the alternative, Cohen argues that even if Congress did allow the BOP discretion in classifying prisoners, the BOP constrained its discretion in this regard by promulgating internal guidelines for its personnel to follow in classifying prisoners. According to Cohen, because BOP personnel did not follow those guidelines when they classified Garcia, the discretionary function exception does not apply in this case.

In addressing these contentions, we will begin by discussing the nature of the discretionary function exception and the prerequisites for its application. We will then discuss whether the BOP's classification of prisoners and placement of them in institutions meet those criteria. Finally, we will discuss whether the BOP failed to follow its own guidelines concerning the classification of prisoners with the result that the discretionary function exception is inapplicable in this case.

## A. The Discretionary Function Exception

The FTCA "waives the United States government's sovereign immunity from suit in federal courts for the negligent actions of its employees." Ochran,

117 F.3d at 499. The FTCA waiver of immunity is subject to several exceptions. The discretionary function exception, which is at issue in this case, precludes government liability for "[a]ny claim based upon . . . the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2860(a). If the discretionary function exception applies, the FTCA claim must be dismissed for lack of subject matter jurisdiction. See, e.g., Powers v. United States, 996 F.2d 1121, 1126 (11ᵗʰ Cir. 1993). The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808, 104 S. Ct. 2755, 2762 (1984). Congress believed that imposing liability on the government for its employees' discretionary acts "would seriously handicap efficient governmental operations." Id. at 814, 104 S. Ct. at 2765 (internal citations and quotations omitted).

The Supreme Court has enunciated a two-part test for determining whether the discretionary function exception bars suit against the United States in a given

case. See Ochran, 117 F.3d at 499. First, "we consider the nature of the conduct and determine whether it involves 'an element of judgment or choice.'" Id. (quoting United States v. Gaubert, 499 U.S. 315, 322, 111 S. Ct. 1267, 1273 (1991)). "Government conduct does not involve an element of judgment or choice, and thus is not discretionary, if 'a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive.'" Id. (quoting Gaubert, 499 U.S. at 322, 111 S. Ct. at 1273 (internal citations and quotations omitted)).

Second, "if the conduct at issue involves the exercise of judgment, we must determine whether that judgment is grounded in considerations of public policy." Id. "[T]he purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." Gaubert, 499 U.S. at 323, 111 S. Ct. at 1273 (internal quotations and citations omitted). "In making this determination, we do not focus on the subjective intent of the government employee or inquire whether the employee actually weighed social, economic, and political policy considerations before acting."

<u>Ochran</u>, 117 F.3d at 500.  Instead, we "focus on the nature of the actions taken and on whether they are susceptible to policy analysis." <u>Gaubert</u>, 499 U.S. at 325, 111 S. Ct. at 1275.

## B.  Whether the BOP's Classification of Prisoners and Placement of Them in Institutions Involves Conduct or Decisions That Fall Within the Discretionary Function Exception

In determining whether the discretionary function exception applies in this case, we first address whether the BOP's decisions concerning classification of prisoners and what institution to place them in "involve[] an element of judgment or choice." <u>Gaubert</u>, 499 U.S. at 322, 111 S. Ct. at 1273.  Cohen contends that the BOP's decisions in this regard do not meet this first prong of the two-part discretionary function exception test.  In support of his contention, Cohen points to 18 U.S.C. § 4042, which provides in relevant part that "[t]he Bureau of Prisons, under the direction of the Attorney General, shall . . . provide for the safekeeping, care, and . . . protection . . . of all persons charged with or convicted of offenses against the United States."  He contends that this language establishes a non-discretionary duty of care toward prisoners.  In particular, Cohen argues that the § 4042 duty of care applies to the BOP's decisions concerning prisoner custody classification and thus removes cases,

8

such as this one, where one prisoner assaults another, from the discretionary function exception. Under Cohen's theory, the BOP violated its § 4042 duty of care when it classified Garcia at the lowest security classification and placed him in the same minimum security institution as Cohen.

Cohen cites several decisions which he asserts support his contention that § 4042 imposes a non-discretionary duty of care on BOP personnel and takes this case outside the discretionary function exception. However, we find those decisions neither controlling nor persuasive on this issue. First, Cohen cites the Supreme Court's decision in United States v. Muniz, 374 U.S. 150, 83 S. Ct. 1850 (1963). In that case, the Supreme Court merely held that prisoners as a class were not barred from bringing claims under the FTCA. See id. at 158, 83 S. Ct. at 1855. However, the Court expressly reserved the issue of whether the discretionary function immunity exception applies to cases in which prisoners allege that the BOP has negligently violated a duty of care. See id. at 163, 83 S. Ct. at 1858 (declining to "intimate any opinion upon [the] applicability" of the discretionary function exception to negligence claims brought by the prisoners in that case).

Next, Cohen cites a pair of former Fifth Circuit cases, Jones v. United States 534 F.2d 53 (5ᵗʰ Cir. 1976), and Cowart v. United States, 617 F.2d 112 (5ᵗʰ Cir. 1980). In both Jones and Cowart, we simply affirmed the district court's finding that the BOP had not breached any duty of care owed to a prisoner who was attacked by another prisoner. See Jones, 534 F.2d at 55; Cowart, 617 F.2d at 119. Because we did not address the discretionary function exception, and did not find liability in Jones, that case cannot support Cohen's position that § 4042 establishes a non-discretionary duty that removes from the discretionary function exception cases in which prisoners in the care of the BOP are assaulted by another prisoner.

As for Cowart, although not essential to the holding, we did state that the discretionary function exception does not apply to cases in which a prisoner alleges negligence on the part of the BOP because "the actions of prison officials are at the 'operational level.'" Cowart, 617 F.2d at 116 n.15. However, any weight that would otherwise attach to that dicta has been vitiated by the Supreme Court's subsequent decision in United States v. Gaubert, 499 U.S. 315, 111 S. Ct. 1267 (1991). The Supreme Court held in Gaubert that the mere fact a government official performs an action at the "operational level" (as opposed

10

to the "planning level") does not remove that official's action from the discretionary function exception for purposes of suits under the FTCA.  See id. at 325, 111 S. Ct. at 1275.  Where one of our prior panel opinions conflicts with a later Supreme Court decision, we are compelled to follow the Supreme Court's decision.  See, e.g., Gianelli Money Purchase Plan and Trust v. ADM Investor Serv., Inc., No. 97-2586, (11th Cir. July 22, 1998) ; Cottrell v. Caldwell, 85 F.3d 1480, 1485 (11th Cir. 1996).  We do so here.

Finally, Cohen cites the Third Circuit's decision in Jones v. United States, 91 F.3d 623 (3d Cir. 1996).  In that case, a prisoner alleged that the BOP, by withholding his medication, had breached the § 4042 duty of care to protect him. The Third Circuit held that those allegations were sufficient to avoid summary judgment. See id. at 625.  However, because the panel in that case did not even discuss the discretionary function exception, that case does not persuade us to adopt Cohen's proposition that § 4042 establishes a non-discretionary duty that makes the discretionary function exception inapplicable in cases, such as Cohen's, where a prisoner is attacked by another prisoner.

Furthermore, even if § 4042 imposes on the BOP a general duty of care to safeguard prisoners, the BOP retains sufficient discretion in the means it may

11

use to fulfill that duty to trigger the discretionary function exception. We believe our conclusion in this regard is mandated by our holding in Ochran v. United States, 117 F.3d 495 (11th Cir. 1997), and is buttressed by the Seventh Circuit's decision in Calderon v. United States, 123 F.3d 947 (7th Cir. 1997). In Ochran, a witness in a federal drug trial was harmed by the drug defendant, allegedly due to the failure of the United States Attorney to protect her. The plaintiff argued that a regulation which required the United States Attorney to protect her created a non-discretionary duty, with the result that the discretionary function exception did not shield the United States from liability under the FTCA. Not unlike § 4042, the regulation at issue there stated that United States Attorneys "shall . . . protect[] [witnesses] against . . . harm . . . from a suspect." Ochran 117 F.3d at 500. We nonetheless held in Ochran that the discretionary function exception did apply because the use of the language "shall . . . protect[]" did not mean that the regulation "left no room for the [U.S. Attorney] to exercise judgment or choice" about how to protect witnesses. Id. at 500. Thus, Ochran stands for the proposition that even though a statute or regulation imposes a general duty on a government agency, the discretionary function

12

exception may still apply if the agency retains sufficient discretion in fulfilling that duty. That is what we have in this case.

The Seventh Circuit's reasoning in Calderon also convinces us that § 4042 leaves BOP personnel sufficient discretion about how their § 4042 duty of care is to be accomplished to warrant application of the discretionary function exception. Calderon rejected the argument that the general duty to protect prisoners set forth in § 4042 prevents the Government from invoking the discretionary function exception in an FTCA case arising from a prisoner-on-prisoner attack. The Seventh Circuit reasoned persuasively that "[w]hile it is true that [§ 4042] sets forth a mandatory duty of care, it does not, however, direct the manner by which the BOP must fulfill this duty. The statute sets forth no particular conduct the BOP personnel should engage in or avoid while attempting to fulfill their duty to protect inmates." Calderon 123 F.3d at 950. We agree.

Thus Cohen's reliance on § 4042 is misplaced. As the Seventh Circuit explained, for such an "argument to be effective, [the plaintiff] must demonstrate that § 4042 sets forth nondiscretionary actions which BOP personnel were required to undertake to protect [him]." Id. Section 4042 does not set forth any

13

required nondiscretionary actions. Therefore, we reject Cohen's argument that § 4042 imposes a non-discretionary duty of care on the BOP which removes this case from the discretionary function exception.

Nor does any other statutory provision impose a non-discretionary duty of care on the BOP in classifying prisoners and placing them in institutions. To the contrary, two statutory provisions give the BOP discretion in this regard. The first of these is 18 U.S.C § 4081, which provides in relevant part that prisoners should be classified:

> according to the nature of the offenses committed, the character and mental condition of the prisoners, and such other factors as should be considered in providing an individualized system of discipline, care, and treatment of the persons committed to [Federal penal and correctional] institutions.

18 U.S.C. § 4081. The second provision, 18 U.S.C. § 3621, provides in relevant part that the BOP:

> shall designate the place of the prisoner's imprisonment. The [BOP] may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the [BOP] . . . that the [BOP] determines to be appropriate and suitable, considering –
>
> (1) the resources of the facility contemplated;
>
> (2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence–

(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

(B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b).

These statutory provisions do not mandate a specific, non-discretionary course of conduct for the BOP to follow in classifying prisoners and placing them in a particular institution. Instead, they give the BOP ample room for judgment by listing a non-exhaustive set of factors for the BOP to consider and leaving to the BOP what weight to assign to any particular factor. In particular, the language granting the BOP authority to "designate any available penal or correctional facility . . . that the [BOP] determines to be appropriate and suitable," 18 U.S.C. § 3621(b), is indicative of Congress' intent to allow the BOP to rely on its own judgment in classifying prisoners and placing them in institutions. Our conclusion that Congress intended to give the BOP discretion

in making its classification decisions and determinations about placement of prisoners is reinforced by the Senate Report accompanying the legislation that became 18 U.S.C. § 3621. That report provides in pertinent part:

> The Committee, by listing factors for the [BOP] to consider in determining the appropriateness or suitability of any available facility, does not intend to restrict or limit the [BOP] in the exercise of its existing discretion so long as the facility meets the minimum standards of health and habitability of the [BOP], but intends simply to set forth the appropriate factors that the [BOP] should consider in making the designations.

S. Rep. No. 98-225, 98th Cong., 2d Sess. 142, reprinted in 1984 U.S. Code Cong. & Admin News 3182, 3325. Accordingly, the first part of the two-part discretionary function exception test, the element of judgment or choice prong, is satisfied in this case.

We turn now to the second prong, which requires that we determine whether the judgment or discretion the BOP exercises in this regard is the type of discretion which the discretionary function exception is intended to protect. More specifically, we must decide whether the nature of the decision or conduct at issue is "susceptible to policy analysis." Gaubert, 499 U.S. at 325, 111 S. Ct. at 1275. As the Supreme Court noted in Gaubert, we presume that actions or decisions are "grounded in [public] policy" in cases where the statute allows

16

government officials to exercise discretion.  Id. at 324, 111 S. Ct. at 1274.

Deciding how to classify prisoners and choosing the institution in which to place them are part and parcel of the inherently policy-laden endeavor of maintaining order and preserving security within our nation's prisons.  See Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878 (1979) ("Prison administrators . . . should be accorded wide ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.").

This case exemplifies the type of case Congress must have had in mind when it enacted the discretionary function exception.  Under Cohen's theory, anytime a prisoner is injured by another prisoner, he can bring an action claiming that the BOP was negligent in classifying the prisoner who committed the assault and placing him in the institution at which the attack occurred, or in not removing that prisoner based upon some prior incident, or in not restricting his movement, or in not providing more guards, and so forth.  Such second-guessing of the BOP's discretionary decisions is the type of thing avoided by the discretionary function exception, which is designed to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social,

17

economic, and political policy through the medium of an action in tort." Gaubert, 499 U.S. at 323, 111 S. Ct. at 1273 (internal citations and quotations omitted).

Accordingly, we conclude that the BOP's actions in classifying prisoners and placing them in institutions involve conduct or decisions that meet both prerequisites for application of the discretionary function exception.

## C. Whether the Alleged Failure of the BOP to Follow Its Own Guidelines Concerning the Classification of Prisoners Renders the Discretionary Function Exception Inapplicable

Cohen argues that even if Congress gave the BOP discretion in classifying prisoners and placing them in institutions, the BOP constrained its discretion in this regard by promulgating internal guidelines set forth in Program Statement 5100.2 (the "Program Statement). According to Cohen, because BOP personnel violated provisions of the Program Statement when they classified Garcia as suitable for the lowest security classification level and placed him at the minimum security Jesup institution, the discretionary function does not apply in this case. The district court found that the BOP failed to adhere to the Program Statement when its employees improperly filled out a "security designation form" as part of the process of determining Garcia's custody classification.

Where Congress has granted an agency discretion in implementing a regulatory statute, the agency's promulgation of regulations or guidelines describing how it will use that discretion is protected by the discretionary function exception. See Gaubert, 499 U.S. at 323, 111 S. Ct. at 1274. Furthermore, if the regulation or guideline "mandates particular conduct, and the [agency's] employee obeys the direction, the Government will be protected [by the discretionary function exception] because the action will be deemed in furtherance of the policies which led to the promulgation of the regulation [or guideline]. Id. at 324, 111 S. Ct. at 1274. On the other hand, "[i]f the employee violates the mandatory regulation [or guideline], there will be no shelter from liability because there is no room for choice and the action will be contrary to policy." Id.

As we have discussed, Congress has given the BOP discretion in classifying prisoners and placing them in institutions. Accordingly, under Gaubert, the BOP's guidelines, as set forth in the Program Statement, and the actions of BOP personnel consistent with those guidelines are insulated by the discretionary function exception. The issue we must address is whether the district court correctly found that the BOP personnel failed to follow the

19

guidelines in the Program Statement when they filled out Garcia's security designation form. We conclude that the district court clearly erred in reaching that conclusion.

The district court found that BOP personnel failed to follow the Program Statement guidelines in filling out Garcia's security designation form because they did not include Garcia's two prior felony convictions on that form. Garcia's two prior convictions, neither of which resulted in incarceration, were for (1) possession and sale of cocaine and (2) possession of cocaine, possession of a firearm, and resisting arrest without violence. Although the district court did not specify where on the security designation form those convictions should have been listed, Cohen contends BOP personnel were required to include them under either the "Prior Commitment" or "History of Violence" sections of the form. We disagree.

The Program Statement explicitly states that only convictions which resulted in confinement should be included in the Prior Commitment section. Because Garcia's two prior convictions did not result in confinement, they were properly omitted from that section. As for the History of Violence section, nothing in the Program Statement requires including in that section convictions

20

of possession and sale of cocaine, possession of a firearm, or resisting arrest without violence. Thus the district court clearly erred in finding that BOP personnel incorrectly filled out Garcia's security designation form. Accordingly, Cohen's argument, which the district court accepted, that the discretionary function exception does not apply because the BOP failed to follow its own guidelines is without merit.

Cohen also claims that the BOP failed to follow the Program Statement when it classified Garcia at the lowest security level, because the Program Statement did not allow aliens to be classified at that level. This argument fails both because the district court did not find that Garcia was an alien, and because the Program Statement provides that the BOP's regional director retains the discretion to assign an alien to the lowest security level.

## D. Summary

To sum up, we hold that (1) the BOP's actions in classifying prisoners and placing them in institutions involve conduct or decisions that fall within the discretionary function exception; (2) 18 U.S.C. § 4042 does not render the discretionary function exception inapplicable to cases, such as this one, in which a prisoner attacks another prisoner; and (3) because BOP personnel followed the

21

guidelines in the Program Statement when they classified Garcia and placed him in the minimum security Jesup institution, those guidelines do not render the discretionary function exception inapplicable. Accordingly, that exception shields the United States from liability to Cohen under the FTCA, and the district court should have dismissed Cohen's FTCA claim for lack of subject matter jurisdiction. In light of our holding that Cohen's FTCA claim should have been dismissed, the Government's argument that it was not negligent and Cohen's cross-appeal claiming he was entitled to increased damages are moot.

## IV. CONCLUSION

The district court's judgment is REVERSED.