# United States Court of Appeals
## For the First Circuit

No. 02-2512

DOMINGO SANTANA-ROSA,
Plaintiff, Appellant,

v.

UNITED STATES OF AMERICA,
Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gilberto Gierbolini-Ortiz, Senior U.S. District Judge]

Before

Selya, Circuit Judge
Lipez, Circuit Judge
and Ponsor*, District Judge.

Jose M. Rocafort-Bustelo, with whom Peter Calderon Melendez was on brief for appellant.
Fidel A. Sevillano-Del Rio, Assistant U.S. Attorney, with whom H.S. Garcia, United States Attorney, and Miguel A. Fernandez, Assistant U.S. Attorney, were on brief for the United States.

July 9, 2003

---

*Of the District of Massachusetts, sitting by designation.

**PONSOR, District Judge**.

## I.  Introduction

Appellant Domingo Santana Rosa ("Santana Rosa"), a prisoner in the custody of the Bureau of Prisons ("BOP") at the Metropolitan Detention Center ("MDC") in Guaynabo, Puerto Rico, was attacked and badly injured by another inmate wielding a tool referred to as a "sweeping brush."  He brought suit against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 et seq., anchoring jurisdiction on 28 U.S.C. § 1346(b).  The district court granted the defendant's motion for summary judgment based, inter alia, on the discretionary function exception set forth within the FTCA at 28 U.S.C. § 2680(a).  Santana Rosa has appealed this decision.

For the reasons set forth below, we conclude that the district court properly applied the exception and appropriately granted judgment pursuant to Fed. R. Civ. P. 56(c).

## II.   Factual Background

Given the entry of summary judgment, the facts as they pertain to the issues on appeal must be viewed in the light most favorable to the appellant.  Plumley v. S. Container, Inc., 303 F.3d 364, 367 (1st Cir. 2002).  Seen from this perspective, the record would support a view of the relevant background as follows.

On July 25, 1996, Santana Rosa was playing dominos in the recreational yard of Unit 2C at the MDC when he was the victim of

-2-

a sudden and unprovoked attack by a fellow inmate, Jesus Bello ("Bello"). A kitchen orderly at MDC, Bello struck Santana Rosa on the head with a 24-inch sweeping brush. The blow inflicted severe injuries, including a six-inch gash and associated trauma to the head, which required hospitalization for several days. Bello was subsequently convicted for this criminal act.

The record is not clear whether Bello received the sweeping brush to assist him in carrying out his duties as a kitchen orderly, or got his hands on it without permission because the item had been left out. The complaint at paragraph 10 states that the BOP "entrusted" Bello with the sweeping brush. The appellant's memorandum, at 7, on the other hand, states that the brush was left "outside its closet and unattended," implying that Bello obtained it improperly. This ambiguity will not affect the court's analysis. Whatever the species of negligence, the court will assume for purposes of this appeal that Bello was given, or got, the sweeping brush as a result of some arguable failure to use reasonable care on the part of the MDC staff.

The court will also assume that in 1988, some eight years before the attack, Bello had been convicted of a crime of violence (aggravated assault), as appellant claims, and that correctional officials knew or should have known of this fact. Significantly, however, the record also offers (1) no indication of any violence by Bello within the facility prior to the attack on the appellant,

(2) no previous history of friction between Bello and the appellant and (3) no evidence of any oral or written complaints by the appellant regarding Bello. Finally, a careful review of the record discloses no specific rules or guidelines limiting the discretion of the MDC staff with regard to inmate work assignments or safe-keeping of tools.

Santana Rosa's suit under the FTCA claimed that his injuries resulted from the government's negligence, specifically the failure on the part of MDC staff to take adequate precautions to prevent Bello from obtaining the sweeping brush and, more generally, the facility's failure to provide appellant adequate protection during his term of imprisonment, in violation of 18 U.S.C. § 4042 (giving federal correctional officials the responsibility to "safeguard" and "protect" inmates).

In a detailed memorandum, the district judge found that the BOP's decisions regarding job assignments and availability of cleaning implements involved the exercise of judgment by responsible federal employees and, as such, fell well within the discretionary function exception to the FTCA. The court further found that, even if the discretionary function exception did not apply, the BOP was simply not negligent, as a matter of law.

### III. Discussion

We apply a de novo standard of review to a lower court's determination that the discretionary function exception bars relief

in an FTCA case.  See Shansky v. United States, 164 F.3d 688, 690 (1st Cir. 1999).  A brief review of the pertinent law makes application of that standard to the facts of this case straightforward.

We begin with the basics.  Despite some discomfort with the proposition, it is a fundamental tenet of our country's jurisprudence that, as a general matter, sovereign immunity bars suits against the government.  This notion derives from the British legal fiction that "the King can do no wrong," see Feather v. The Queen, 122 Eng. Rep. 1101, 1205 (Q.B. 1865), and therefore can never appear as a defendant in "his" own courts.  See United States v. Lee, 106 U.S. 196, 208 (1882).  For more than a hundred years, American judges have expressed reservations about the transferability of a doctrine with such a distinctly monarchal flavor to our republican nation.  See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 704 (1999) (Breyer, J., dissenting) (observing that the doctrine is "more akin to the thought of James I than of James Madison"); see also United States v. Lee, 106 U.S. at 208.  Nevertheless, the concept of sovereign immunity, both as to the federal government and the states, is at present firmly rooted in our law.  See generally Coll. Sav. Bank, 527 U.S. at 666; Idaho v. Coeur d'Alene Tribe, 521 U.S. 261 (1997).

Passed in 1946, the FTCA offers a limited waiver of the federal government's sovereign immunity as to negligent acts of government employees acting within the scope of their employment. It provides that "[t]he United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances. [. . .]"  28 U.S.C. § 2674.  In proper circumstances, prisoners such as the appellant here may invoke the FTCA to seek damages for injuries received while in confinement. United States v. Muniz, 374 U.S. 150, 153 (1963).

The potentially broad avenue offered by the FTCA around sovereign immunity, however, is itself subject to several exceptions.  Perhaps the most expansive of these is the "discretionary function" exception, which precludes government liability for claims based upon "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  Proper invocation of this exception means that the government will be shielded from liability, no matter how negligently an employee may have acted.  See, e.g., Bruneau v. United States, 150 F. Supp. 2d 303, 308 (D. Mass. 2001).

The elastic nature of the discretionary function exception extends the government's protection from liability to a broad range of conduct.  Because of this, the exception has

attracted pungent criticism. As one Circuit Judge has described it, "two hundred years after we threw out King George III, the rule that 'the king can do no wrong' still prevails at the federal level in all but the most trivial matters. . . . [T]he FTCA (and for that matter Congress' injunction that a program be carried out safely) is largely a false promise in all but 'fender benders' and perhaps some cases involving medical malpractice by government doctors." Allen v. United States, 816 F.2d 1417, 1424-25 (10th Cir. 1987) (McKay, C.J., concurring). Chief Judge Merritt of the Sixth Circuit has observed, more colorfully, that "the discretionary function exception has swallowed, digested and excreted the liability-creating sections of the Federal Tort Claims Act." Rosebush v. United States, 119 F.3d 438, 444 (6th Cir. 1997)(Merritt, C.J., dissenting).

Despite these criticisms, given the FTCA's rather broad waiver of sovereign immunity, the rationale for some sort of discretionary function exception is compelling. Governmental operations would be burdened, if not paralyzed, with courts "second guessing" policy decisions through the medium of tort law. Berkovitz v. United States, 486 U.S. 531, 536-37 (1988). As the Supreme Court has held, the discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private

individuals." United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984).

The precise contours of the discretionary function exception have themselves evolved since the FTCA's enactment, as the courts have attempted to understand its scope and shape its impact. For the first forty years or so, an application of the discretionary function exception depended on whether the conduct occurred at a planning stage, rather than the "operational level." See Indian Towing Co. v. United States, 350 U.S. 61, 64 (1955); Dalehite v. United States, 346 U.S. 15, 34 (1953).

This distinction was eventually discarded in favor of an analysis based upon "the nature of the conduct rather than the status of the actor." Varig Airlines, 467 U.S. at 813; see also Berkovitz, 486 U.S. at 536.

As the law stands now, the analysis of whether the discretionary function exception applies in a particular FTCA case begins, naturally enough, with the question of whether the Government's allegedly actionable conduct was discretionary. United States v. Gaubert, 499 U.S. 315, 322 (1991); see also Magee v. United States, 121 F.3d 1, 4 (1st Cir. 1997). To demonstrate that its conduct was discretionary, the government need only show that there was "room for choice" in making the allegedly actionable decision or decisions. Attallah v. United States, 955 F.2d 776, 783 (1st Cir. 1992). If the challenged conduct is found to have

been discretionary, a court must then assess whether the Government's actions were of the kind that the discretionary function exception was designed to shield -- that is, whether the Government's acts were "susceptible to policy analysis." Gaubert, 499 U.S. at 325.

In this case, the appellant's claims may be construed to challenge both specific aspects of the government's behavior -- including its failure to secure the sweeping brush properly and (perhaps) its allegedly negligent decision to assign the assailant duties as a kitchen orderly -- as well as the government's more general failure to safeguard the appellant's well being. As discussed below, the discretionary function exception applies to both of these theories of negligence.

Turning to the appellant's more specific claims, and beginning with the first portion of the Gaubert inquiry, the court is constrained to conclude, as a matter of common sense and practicality, that the BOP necessarily exercised discretion -- within an atmosphere where there was "room for choice" -- in deciding to assign Bello duties as a kitchen orderly and in determining where and how to store necessary cleaning equipment. As the district court's memorandum points out, the relevant BOP program statement and MDC housekeeping plan outline broad guidelines for occupational safety and facility sanitation, without any explicit controlling directives. The BOP exercises, and must

-9-

exercise, broad discretion in making these sorts of decisions within a penal facility.

Turning to the second segment of the <u>Gaubert</u> inquiry, the court must also conclude that decisions regarding maintenance of cleaning supplies and inmate work assignments are susceptible to policy-related analysis. Possible considerations that would inevitably influence decision-making in this area might include, for example: budgetary concerns, sanitation needs, the character of the particular inmate population, the need for a specific level of security, the proper scheduling of cleaning assignments, the convenience or necessity of easy access to necessary equipment, and the available inmates' prior work experience. An assessment of these factors, and probably others, would necessarily be required to produce the decision whether to give a particular inmate a specific job assignment and how to secure needed equipment.

In sum, no claim under the FTCA can be pursued on the facts offered here, based upon the defendant's decision to select plaintiff's assailant for his job assignment, or to secure the sweeping brush he ultimately used as a weapon.

Equally clearly, the discretionary function exception precludes appellant's more general claim that the BOP failed to protect him. At least two other courts of appeals have issued well-reasoned opinions applying the discretionary function exception in the context of prisoner-on-prisoner attacks. The

Eleventh Circuit specifically rejected the proposition that a prisoner who has been attacked by another can bring a claim based generally upon allegations that "the BOP was negligent in classifying the prisoner who committed the assault and placing him in the institution at which the attack occurred, . . . or in not providing more guards, and so forth." Cohen v. United States, 151 F.3d 1338, 1344 (11th Cir. 1998), cert. denied, 526 U.S. 1130 (1999). The Seventh Circuit has reached a similar conclusion. See Calderon v. United States, 123 F.3d 947, 949-50 (7th Cir. 1997).

We find the holdings of these circuits persuasive. Statutory provisions vest the BOP with the task of providing for the protection and safekeeping of prisoners in very general terms. The BOP is broadly entrusted with "management and regulation of all Federal penal and correctional institutions." It is to provide for "the safekeeping, care and subsistence of all persons charged with or convicted of offenses against the United States" and guarantee "the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042. As noted by the Eleventh Circuit, these provisions "do not mandate a specific, non-discretionary course of conduct," but rather leave the BOP "ample room for judgment." Cohen, 151 F.3d at 1343.

The management of large numbers of potentially dangerous individuals within a penal facility inevitably requires not only the exercise of discretion but decision-making within the context of various difficult policy choices. In many, if not most, instances where an inmate is unfortunately injured by another inmate, it will be possible to argue that a different exercise of discretion or a different policy choice might well have forestalled the injury. Nevertheless, decisions with regard to classification of prisoners, assignment to particular institutions or units, and allocation of guards and other correctional staff must be viewed as falling within the discretionary function exception to the FTCA, if penal institutions are to have the flexibility to operate. In this case, as in Cohen and Calderon, the facts viewed in the light most favorable to the plaintiff "exemplif[y] the type of case Congress must have had in mind when it enacted the discretionary function exception." Id. at 1344.

In reaching this decision, it is important to emphasize that we do not intend to suggest that a prisoner-on-prisoner attack may never provide the basis for a claim under the FTCA. Indeed, the Supreme Court's Muniz decision constitutes controlling authority to the contrary. In that case, the plaintiff was attacked by twelve other inmates and pursued by them into a dormitory under the eyes of a guard who, instead of intervening, chose to lock the plaintiff inside the dormitory with his

attackers.  Thus assisted, the attackers proceeded to beat the plaintiff so badly his skull was fractured and he was blinded in one eye.  United States v. Muniz, 374 U.S. at 152.  Although the Court declined to opine on the applicability of the discretionary function exception to those facts, id. at 163, a scenario of that sort obviously offers a sharp contrast to the facts of record here. In this case, we simply hold that, however ambiguous the boundaries of the discretionary function exception may appear to be, the conduct cited by this appellant as the basis for his claim manifestly fell within them.[1]

In view of our conclusion that the discretionary function exception deprived the district court of jurisdiction over this FTCA claim, we need not address the district court's alternate holding that, even if the discretionary function exception did not apply, the BOP was simply not negligent, except to note that the district court's decision on this point appears well founded. Apart from the attack itself, regrettable as that was, little or no evidence of any failure to use reasonable care is visible on this record.

---

[1]Following argument, the appellant filed a supplemental motion, termed a "Motion in Auxilium," offering additional material for this court's consideration.  That motion is improper and is hereby DENIED, with the observation (for what consolation it may offer) that the contents of the motion, even if considered, would not have affected the outcome of this appeal.

For the foregoing reasons the decision of the district court is **AFFIRMED.**