[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 3, 2006
THOMAS K. KAHN
CLERK

No. 05-13873
Non-Argument Calendar

_____

D. C. Docket No. 03-01539-CV-BBM-1

IDRIS ENLOW,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(January 3, 2006)

Before BLACK, CARNES and BARKETT, Circuit Judges.

PER CURIAM:

## I.

Idris Enlow pleaded guilty to drug and firearm charges and received a 90 month sentence. Prior to sentencing, he cooperated with prosecutors by testifying against several federal defendants. Due to prison officials' concerns for his safety, the United States Bureau of Prisons (BOP), transferred Enlow to two other prisons before finally moving him to the United States Penitentiary in Atlanta (USP-Atlanta) on January 31, 2000. Less than three weeks later Enlow was assaulted by 3 other inmates. BOP officials at USP-Atlanta subsequently removed Enlow from the general population and into a special housing unit while the assault was under investigation. USP-Atlanta issued a threat assessment indicating that Enlow had been labeled as an informant by inmates and recommending that he be transferred to a more secure facility.

On July 20, 2000, Reginald Ammons, Associate Warden of Custody at USP-Atlanta, released Enlow from the special housing unit and placed him back in the general population. Ammons made the decision to move Enlow without reviewing Enlow's file, where he would have found the threat assessment. Three days later and absent any provocation by Enlow, Enlow was stabbed multiple times by another inmate.

Following an investigation of the incident, Ammons received an official

reprimand for "endangering the safety of an inmate." The reprimand letter informed Ammons that such behavior "will not be tolerated."

Enlow filed suit against the United States, alleging that the BOP was liable under the Federal Tort Claims Act for negligence in transferring him out of the special housing unit without first reviewing his file. Enlow also brought a breach of contract claim alleging that the government breached his implied contract with Enlow under the plea agreement. Enlow sought $2 million in damages for the incident. After discovery Enlow filed a partial motion for summary judgment based on his negligence theory, and the United States filed a cross motion for summary judgment for lack of subject matter jurisdiction. The United States argued that the discretionary function exception to the FTCA barred the claim, and the BOP breached no duty of care. The district court ruled that Enlow's FTCA action was barred by the discretionary function exception to the FTCA. Accordingly, the court granted summary judgment to the United States and dismissed the entire case.

Enlow makes two arguments on appeal: (1) the district court erred when it found that the discretionary function of the FTCA barred his negligence claim, and (2) the district court erred in dismissing the entire complaint without addressing his breach of implied contract claim. We review a district court's grant of summary

3

judgment <u>de novo</u>, applying the same standards of review as the district court.

<u>Cohen v. United States</u>, 151 F.3d 1338, 1340 (11th Cir. 1998).

**II.**

The district court did not err in holding that the discretionary function exception to the FTCA barred Enlow's claim.  In order for a claim to fall within the discretionary function exception of the FTCA, it must meet two requirements: (1) the challenged decision must involve an element of choice, and (2) the governmental decision must implicate an exercise of judgment grounded on considerations of public policy.  <u>United States v. Gaubert</u>, 499 U.S. 315, 322, 111 S. Ct. 1267, 1273 (1991); <u>Cohen</u>, 151 F.3d at 1340.

As to the first inquiry, "if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," and "the employee has no rightful option but to adhere to the directive," the conduct does not involve an element of choice and therefore is not discretionary.  <u>Gaubert</u>, 449 U.S. at 322, 111 S. Ct. at 1273 (internal marks omitted).   In this case, the challenged BOP action is Warden Ammon's decision to transfer Enlow out of special housing and into the general prison population without first reviewing his file. The district court carefully reviewed and rejected each of Enlow's arguments that various federal statutes and BOP internal policies mandate a review of a prisoner's file before

4

transferring the prisoner out of special housing and into the general population. Enlow does not rehash these arguments on appeal.

Enlow spends this portion of his brief arguing that the district court improperly relied on evidence that did not support its conclusion. Specifically, a BOP internal policy states: "The Warden may delegate authority to place an inmate in administrative detention to Lieutenants. Prior to the inmate's placement in administrative detention, the Lieutenant is to review the available information and determine whether the placement . . . is warranted." The district court found that the plain language of this policy requires "a review of the available information" only "prior to" placing the inmate in administrative detention, rather than prior to the inmate's transfer out of administrative detention. The district court stated: "In the absence of a clear mandate requiring the same review prior to the inmate's transfer out of administrative detention, the court finds that the BOP's action in this case was discretionary."

The district court could have stopped there, but it continued by stating that its finding was "further bolstered by the testimony of Gregory Duncan." On appeal Enlow focuses on the fact that the district court relied on testimony of Duncan which, Enlow claims, "belies" the district court analysis. Because the district court correctly found that the plain language of the internal prison policy does not

5

mandate a review of the prison files, any dispute over the characterization of Duncan's testimony is irrelevant. Even if we agree with Enlow that "Duncan's testimony cannot be reasonably construed to mean that the BOP did not require an Associate Warden review an inmate's file" before transfer, that does not mean that it was BOP policy to review files before transfer. Duncan merely testified that he was "unaware" of a BOP policy mandating review of files, but that "normally" a warden would review a file before transferring an inmate out of administrative detention. Something that is "normally" done is not necessarily a policy, just like being "unaware" of a policy does not show absence of the policy.

Enlow argues that the "factual context of this case . . . makes it clear that such a policy existed." According to Enlow, the fact that Ammons was reprimanded shows that failure to review Enlow's file must have been a policy violation. Otherwise, according to Enlow, there is no reason for the reprimand. Enlow offers no precedent to support this proposition. Moreover, the gist of Enlow's argument is that every time a federal employee is reprimanded for any action, discretionary or not, the reprimand serves as evidence of an official policy, and therefore the action was not discretionary. We cannot accept such circular reasoning, which assumes that employees are only reprimanded for actions that violate policy, and not discretionary actions. Such an argument is clearly

6

untenable.

Enlow admits that "Federal Reporters are replete with cases holding that the discretionary function exception bars claims arising from allegations that the Bureau of Prisons negligently classified or transferred a prisoner." However, he argues that he is not challenging these holdings because "his claim rests on the Associate Warden's failure to read the threat assessment contained in [Enlow's] file before releasing him into the general prison population." Enlow's argument separates the failure to read the threat assessment from the decision to transfer Enlow out of the special housing unit. However, we find that Ammons' failure to read the threat assessment is inextricably linked to the decision to transfer Enlow. Were we to find otherwise, we would grant Enlow an end-run around precedent squarely opposed to his position. Cohen, 151 F.3d at 1345 (holding that the BOP's actions in classifying and placing prisoners in institutions falls within the discretionary function exception); see also Santana-Rosa v. Untied States, 335 F.3d 39, 43 (1st Cir. 2003) (holding that decisions with regard to assignment of prisoners to particular units must be viewed as falling within the discretionary function exception). Considerations leading up to the decision to transfer are as discretionary as the ultimate decision to transfer, absent a policy dictating otherwise. See Cohen, 151 F.3d at 1340.

Having satisfied the first inquiry, the second question in this case is whether the decision to transfer an inmate from a special housing unit into the general population implicates policy concerns. The case law makes clear that it does. In Cohen we worried that accepting the plaintiff's position would mean that:

> anytime a prisoner is injured by another prisoner, he can bring an action claiming that the BOP was negligent in classifying the prisoner who committed the assault and placing him in the institution at which the attack occurred, or in not removing that prisoner based upon some prior incident, or in not restricting his movement, or in not providing more guards, and so forth. Such second-guessing of the BOP's discretionary decisions is the type of thing avoided by the discretionary function exception, which is designed to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort."

Cohen, 151 F.3d at 1344 (quoting Gaubert, 499 U.S. at 323, 111 S.Ct. at 1273).

Enlow admits that "it is virtually black letter law that decisions concerning the classification of inmates" implicate policy issues. However, he argues that "the process by which these decisions are reached" does not implicate policy concerns because "there was no policy function involved in the decision-making process." Again, we are not persuaded to see any analytical distinction between the ultimate decision to transfer Enlow and the decisional process by which that ultimate decision was reached. Both the final decision and the process which produced it implicate the same policy issues concerning the classification of inmates. Enlow is

8

trying to split hairs with a hammer.  It just doesn't work.

**III.**

As to Enlow's second claim on appeal, we find the district court lacked

jurisdiction to hear the breach of contract claim.  28 U.S.C.A. § 1491(a)(1);

Friedman v. United States, 391 F.3d 1313, 1315 (11th Cir. 2004).  Under the

Tucker Act, 28 U.S.C.A. § 1491(a)(1), the Court of Federal Claims has exclusive

jurisdiction over contract claims against the United States where the claim exceeds

$10,000.  Id.  Here, the claim is for $2 million.  The fact that the district court's

opinion does not seem to contemplate the contract claim is of no consequence.

Because this Court can consider jurisdictional issues for the first time on appeal,

and because we conclude that the district court did not have jurisdiction over the

contract claim, we find the district court properly dismissed that claim.  See

Glickstein v. Sun Bank/Miami, N.A., 922 F.2d 666, 672 n.12 (11th Cir. 1991)

(holding that jurisdictional issues may be raised for the first time on appeal).

AFFIRMED.