[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10625
Non-Argument Calendar
_____

D.C. Docket No. 5:15-cv-00560-CLS

SHANNON RUTHERFORD,

Plaintiff-Appellee,

versus

UNITED STATES OF AMERICA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(January 15, 2019)

Before ED CARNES, Chief Judge, MARTIN, and BRANCH, Circuit Judges.

PER CURIAM:

Shannon Rutherford, a civilian employee of the United States who worked on an Army base, sued the United States under the Federal Tort Claims Act (FTCA) after she was injured while she tried to leave the base. After a bench trial the district court entered judgment for Rutherford. We reverse that judgment because the discretionary function exception to the FTCA shields the United States from liability in this case.

I.

Rutherford worked at the NASA installation on Redstone Arsenal, a U.S. Army garrison that we will refer to as a base. On the day in question, Rutherford was driving up to one of the base's gates to leave while Tommy Bannister drove up to the same gate from outside to enter. Bannister was not authorized to enter the base, but he hoped he could cut through the base to get to a destination on the other side. He was instructed by James Jones, a gate guard, to use a turn-around lane to exit the base. When Bannister failed to use the turn-around lane and instead continued toward the base, Jones deployed a retractable steel barrier that blocked both the inbound and outbound lanes at the gate. Jones did not check to see if any cars were approaching the gate on the outbound lane before he deployed the barrier, so he did not see Rutherford's car approaching. Rutherford was unable to stop her car before she reached the barrier. She crashed into the barrier and was seriously injured.

2

After obtaining no relief through a military administrative process, Rutherford sued the United States under the FTCA. The United States moved to dismiss or, alternatively, stay Rutherford's suit until the Secretary of Labor could determine whether Rutherford was eligible for federal workers' compensation under the Federal Employees' Compensation Act. The district court denied the United States' motion and its later motion to reconsider. The United States later filed a motion to dismiss for lack of subject matter jurisdiction, arguing that the FTCA's discretionary function exception barred Rutherford's suit. The district denied that motion as well. After a bench trial the district court entered judgment for Rutherford.

## II.

The United States contends that the district court erred in finding that the discretionary function exception to the FTCA does not apply. Whether the discretionary function exception applies is a question of subject matter jurisdiction we review de novo. U.S. Aviation Underwriters, Inc. v. United States, 562 F.3d 1297, 1299 (11th Cir. 2009) (per curiam).

Under the FTCA the United States has generally waived its sovereign immunity from suit in federal courts for the negligent actions of its employees. See 28 U.S.C. § 1346(b). That general waiver is subject to certain exceptions, including the discretionary function exception. See id. § 2680(a). That exception

3

"precludes government liability for '[a]ny claim based upon . . . the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.'" Cohen v. United States, 151 F.3d 1338, 1340 (11th Cir. 1998) (alterations in original) (quoting 28 U.S.C. § 2680(a)). "[T]he mere fact a government official performs an action at the 'operational level' (as opposed to the 'planning level') does not remove that official's action from the discretionary function exception for purposes of suits under the FTCA." Id. at 1342. "If the discretionary function exception applies, the FTCA claim must be dismissed for lack of subject matter jurisdiction." Id. at 1340.

"The Supreme Court has enunciated a two-part test for determining whether the discretionary function exception bars suit against the United States in a given case." Id. at 1341. "First, we consider the nature of the conduct and determine whether it involves 'an element of judgment or choice.'" Ochran v. United States, 117 F.3d 495, 499 (11th Cir. 1997) (quoting United States v. Gaubert, 499 U.S. 315, 322, 111 S. Ct. 1267, 1273 (1991)). "Government conduct does not involve an element of judgment or choice, and thus is not discretionary, if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive." Id. (quotation marks omitted).

4

"Second, if the conduct at issue involves the exercise of judgment, we must determine whether that judgment is grounded in considerations of public policy." Id. (citing Gaubert, 499 U.S. at 322–23, 111 S. Ct. at 1273–74). "[T]he purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort . . . ." Gaubert, 499 U.S. at 323, 111 S. Ct. at 1273 (quotation marks omitted). "In making this determination, we do not focus on the subjective intent of the government employee or inquire whether the employee actually weighed social, economic, and political policy considerations before acting." Ochran, 117 F.3d at 500. "Instead, we 'focus on the nature of the actions taken and on whether they are susceptible to policy analysis.'" Cohen, 151 F.3d at 1341 (quoting Gaubert, 499 U.S. at 325, 111 S. Ct. at 1275). "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." Gaubert, 499 U.S. at 324, 111 S. Ct. at 1274.

Before applying this two-part test, "we must determine exactly what conduct is at issue." Autery v. United States, 992 F.2d 1523, 1527 (11th Cir. 1993). Three

actions or omissions are at issue here[1]:  (1)  Jones' failure to retain Bannister's ID before allowing him to drive toward the turn-around lane; (2) Jones' decision to raise the retractable barrier after Bannister failed to use the turn-around lane and continued toward the base; and (3) Jones' failure to make a reasonable effort to ensure that no other vehicles would be affected by the barrier if he deployed it. Contrary to the district court's findings, all of that conduct is protected by the discretionary function exception.

A.

The district court found that Jones' failure to retain Bannister's ID before allowing him to drive toward the turn-around lane failed both prongs of the discretionary function exception test.  In doing so, the court extended an action mandated by a regulation to include a best practice taught in training that was not mandatory.

The regulation at issue requires gate guards to "[o]btain a form of government ID" from anyone trying to gain access to the base without authorization.  The district court read that language to also require gate guards not

---

[1] The district court addressed a fourth: the decision to design the retractable barrier so that it blocked both the inbound and outbound lanes whenever the barrier was deployed.  The district court found that the discretionary function exception protected that particular decision. Neither party has appealed that finding, so we will not address it.

to return the ID of the driver until the driver used the turn-around lane and was prepared to leave the base.

But the regulation says nothing about how long a gate guard must retain an unauthorized person's government ID after obtaining it; it simply requires gate guards to "[o]btain a form of government ID." "Obtain" and "retain" refer to two different — though related — concepts. To "obtain" something is to acquire it. E.g., Obtain, Black's Law Dictionary (10th ed. 2014) ("To bring into one's own possession; to procure, esp. through effort <to obtain wealth>."); Bryan A. Garner, Garner's Dictionary of Legal Usage 626 (3rd ed. 2011) ("[O]btain is a formal word for get."). To "retain" something, on the other hand, is to keep something that has already been obtained. E.g., Retain, Black's Law Dictionary (10th ed. 2014) ("To hold in possession or under control; to keep and not lose, part with, or dismiss."); Garner, supra, at 782 ("[R]etain is a formal word for keep."). So the regulation required Jones to acquire a government ID from Bannister, but it did not require him to keep it for any specific amount of time or until any specified event had occurred.

The record does indicate that the local policy was to retain an unauthorized driver's government ID in the way the district court found to be required by the regulation. But the record also indicates that retaining an unauthorized driver's ID is not a requirement, just a best practice; gate guards have discretion not to retain

an unauthorized driver's ID depending on, for example, the availability of other guards and the amount of traffic at the gate.  Although Jones was required by the regulation to obtain Bannister's ID, he had discretion under the local policy not to retain it.

Jones' failure to obtain Bannister's ID and his failure to retain it constitute separate conduct, and only his failure to retain it is at issue given how Rutherford presented her case to the district court.[2]  See Autery, 992 F.2d at 1527.  Rutherford alleged that Jones' failure "to retain Mr. Bannister's license" — not his failure to obtain it — caused her injuries.[3]  The relevant headings of her post-trial briefs use "Retain," not "Obtain."  And in those briefs, she focused on Jones' failure to retain Bannister's ID while making no more than passing references to any failure to obtain it.[4]  The closest Rutherford came to arguing that Jones' failure to obtain

---

[2] Interestingly enough, Rutherford used "obtain" in her brief to this Court to the near total exclusion of "retain."  She used "retain" in this context only once in her brief, noting that "Jones was trained to retain [an unauthorized visitor's] ID."

She otherwise used "obtain" in her brief to this Court where she used "retain" in her submissions to the district court.  Here's one example:  She noted in her first post-trial brief that "a collateral advantage of retaining the ID is to incentivize the individual to turn around appropriately."  (Emphasis added and quotation marks omitted.)  But in her brief to this Court, she noted that "[o]ne purpose of the requirement of obtaining a form of ID is to provide that individual an incentive to turn around . . . ."  (Emphasis added.)

[3] That is based on the summary of her claims in the amended pretrial order, which "superseded all prior pleadings and 'control[ed] the course of the action,'" Rockwell Int'l Corp. v. United States, 549 U.S. 457, 474, 127 S. Ct. 1397, 1409 (2007) (alteration in original) (quoting Fed. R. Civ. P. 16(d)).

[4] The relevant subsection of her first post-trial brief concludes as follows:  "Therefore, the discretionary function exception is inapplicable to Jones' conduct of failing to retain ID."

Bannister's ID independently caused her injuries was when she incorrectly asserted that the phrase "[o]btain a form of government ID" should be read to include a specific command about how long a gate guard should retain the ID.[5]

Because Jones had discretion not to retain Bannister's ID, his decision not to do so satisfies the first prong of the discretionary function exception test — even if

_____

(Emphasis added.)  The relevant subsection of her second post-trial brief focuses on "the requirement of the retention of ID."  (Emphasis added.)

[5] She first made this assertion in her response to the government's motion to dismiss for lack of subject matter jurisdiction based on the discretionary function exception.  She asserted that "Jones had no discretion to disobey the" regulation — which, again, required Jones to "[o]btain a government ID" from Bannister — "by failing to obtain or retain Bannister's ID." (Emphasis added.)

She made this assertion more directly in her post-trial briefing, where she characterized a witness' testimony as "confirm[ing]" that retaining an ID "is not just a local practice, but is actually contained in the mandatory language of the" regulation.  In both of her post-trial briefs in the district court, she cited the following passage from the trial transcript:

Q: We talked about the standard protocol and procedure of the guard retaining an individual's ID if he can't provide proper information to gain access?

A: Yes, sir.

Q: Do you remember that?  You said there was no written requirement for that.  Didn't you say that?

A: None at the time of the incident, yes, sir.

Q: Okay.  I'm going to refer you again to Plaintiff's Exhibit 1, Page 22, Bates 22.  Paragraph 9 is regarding access denial/vehicle turnaround.  Paragraph 9 Subsection a, it goes on to say, "If unable to validate the visit, initiate turnaround procedures."  Number one, "Obtain a form of government ID."

A: Yes, sir.

Q: Is that part of the order?

A: Yes, sir.

(Emphasis added.)  The words we have underscored make it clear that Rutherford reads "[o]btain a form of government ID" to mean "obtain a form of government ID and retain it."

he abused his discretion. See 28 U.S.C. § 2680(a). His decision also satisfies the second prong because it is susceptible to policy analysis. The district court identified the relevant policies, which are set out in an Army regulation: "prevent[ing] an unauthorized vehicle or pedestrian from entering" the base and "maximiz[ing] throughput of vehicular and pedestrian traffic." Jones' decision about whether to retain Bannister's ID was grounded in those policies, and that's enough to meet the second prong of the discretionary function exception test. See Gaubert, 499 U.S. at 324–25, 111 S. Ct. at 1274–75; Cohen, 151 F.3d at 1342.

In sum, Jones' failure to retain Bannister's ID is protected by the discretionary function exception.

### B.

The district court did not explicitly rule whether the discretionary function exception protected Jones' decision to raise the retractable barrier. But the district court's discussion suggests that it found the decision was not protected by the discretionary function exception. The court stated that Jones' judgment "that Mr. Bannister was 'a gate runner' who posed a threat to the security of the [base] was not rationally grounded in fact" because the situation did not match any of the threat scenarios described in the relevant regulation. Although the district court viewed those threat scenarios as a non-exhaustive list of demonstrative examples,

10

it also emphasized "the lack of congruence between Mr. Bannister's actions and the vehicle threat scenarios described in regulations."

To the extent the district court relied on those findings to determine that the discretionary function exception did not apply to Jones' decision to raise the retractable barrier, it erroneously "collapse[d] the question of whether [Jones] was negligent into the discretionary function inquiry." Autery, 992 F.2d at 1528. In effect, the court found that Jones abused his discretion, but such a finding is not a part of the discretionary function exception, which can apply "whether or not the discretion involved [was] abused." 28 U.S.C. § 2680(a). The relevant regulation plainly states that "[t]he decision to deploy the [retractable barrier] will be at the discretion" of the gate guards and that gate guards "are authorized to immediately deploy" the retractable barrier "[i]f a threat is perceived."

Jones' decision to raise the barrier is the type of action the discretionary function exception protects because it necessarily "involve[d] 'an element of judgment or choice,'" Ochran, 117 F.3d at 499 (quoting Gaubert, 499 U.S. at 322, 111 S. Ct. at 1273), that was grounded in the public policy of ensuring the safety and security of the base, see id.

## C.

The district court also found that Jones' failure to make any effort to ensure that no other vehicles would be directly affected by deploying the retractable

11

barrier was not protected by the discretionary function exception because the relevant regulation required him to make at least some effort. Here again, the district court erroneously "collapse[d] the question of whether [Jones] was negligent into the discretionary function inquiry." Autery, 992 F.2d at 1528.

The relevant regulation states that a gate guard "will make a reasonable effort to ensure that there are no other vehicles that will be directly affected by deploying the" retractable barrier. The district court acknowledged the discretion inherent in the phrase "reasonable effort" but found that the regulation required Jones to "make some effort" — meaning Jones did not have discretion to make no effort. With that erroneous reasoning the court concluded that Jones' failure to make any effort did not meet the first prong of the discretionary function test because it did not "involve[] 'an element of judgment or choice.'" Ochran, 117 F.3d at 499 (quoting Gaubert, 499 U.S. at 322, 111 S. Ct. at 1273).

Although the regulation required a "reasonable effort," it allowed Jones to exercise judgment or choice as to what a "reasonable effort" would be. See Ochran, 117 F.3d at 500–01. In some situations a "reasonable effort" may be no effort — if, for example, even a momentary delay to check for other vehicles would prevent the retractable barrier from stopping a threat. Whether this particular case involves such a situation is irrelevant for the first prong of the discretionary function exception test. What matters is the existence of discretion,

not whether that discretion was wisely exercised. Discretion did exist. See id. at 501–02; see also Cohen, 151 F.3d at 1342 ("[E]ven though a statute or regulation imposes a general duty on a government agency, the discretionary function exception may still apply if the agency retains sufficient discretion in fulfilling that duty."). And the exercise of discretionary judgment satisfies the second prong of the discretionary function exception test because its existence is grounded in the public policies of ensuring the safety of the base and other vehicles at the gate. See Cohen, 151 F.3d at 1341. The discretionary function exception bars us from evaluating Jones' exercise of judgment.

### III.

We hold that the discretionary function exception to the FTCA shields the United States from liability to Rutherford under the FTCA and that the district court should have dismissed Rutherford's FTCA suit for lack of subject matter jurisdiction.[6] The district court's judgment is

**REVERSED.**

---

[6] Given our conclusion that the district court lacked subject matter jurisdiction over Rutherford's FTCA claims, we need not address the United States' contention that the district court erred in finding that there is not a substantial question whether the Federal Employees' Compensation Act covers Rutherford's injuries.