**Faustino CALDERON, Plaintiff–
Appellant,**

v.

**UNITED STATES of America,
Defendant–Appellee.**

No. 96–2248.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 9, 1997.

Decided July 28, 1997.

Ralph D. Davis, Janssen, Becker, Maher & Wertz, Peoria, IL, John M. Beal (argued), Chicago, IL, for Plaintiff–Appellant.

Samuel D. Brooks (argued), Office of the U.S. Attorney, Chicago, IL, for Defendant–Appellee.

Before MANION, KANNE and EVANS, Circuit Judges.

KANNE, Circuit Judge.

Faustino Calderon and Luis Perez were cellmates at the federal correctional institution in Oxford, Wisconsin ("FCI Oxford") when Calderon provided information to the Government relating to the criminal activity of Jose Rivera—a relative of Perez. Perez subsequently learned or believed that Calderon had provided this information to the Government, and on several occasions he either threatened Calderon or extorted money from him. Fearing further reprisals, Calderon told at least four of the Bureau of Prisons ("BOP") personnel at FCI Oxford about Perez's threats. Unfortunately, the prison personnel took no steps to protect Calderon or to discipline Perez.

On January 13, 1993, as Calderon was preparing to take a shower, Perez attacked Calderon with a homemade razor knife causing serious injury to Calderon. As a result of this attack, Calderon's ear was severed and he suffered numerous other cuts about his head and shoulders. Calderon was taken to a hospital, where his ear was reattached and he received over 100 stitches.

In February, 1994, Calderon filed an administrative claim based on this incident with the prison authorities, which the BOP subsequently denied. In January of 1995, Calderon filed a civil complaint in federal district court pursuant to the Federal Torts Claim Act ("FTCA"), alleging that the Government was negligent in failing to prevent the attack by his former cellmate. The Government moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), and in the alternative, for summary judgment, asserting the discretionary function exception defense to the FTCA. The district court granted the Government's motion to dismiss holding that the discretionary function exception barred Calderon from asserting his claim and thus, Calderon failed to establish subject matter jurisdiction. This appeal followed. For the following reasons, we affirm the district court's decision.

## ANALYSIS

Because the examination of the district court's decision to grant the Government's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is a matter of law, we review the decision *de novo*. *Grammatico v. United States*, 109 F.3d 1198, 1201 (7th Cir.1997); *Bailor v. Salvation Army*, 51 F.3d 678, 684 (7th Cir.1995).

The FTCA authorizes suits against the Government for money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable...." 28 U.S.C. § 1346(b). While the FTCA on its face is a "broad waiver" of sovereign immunity that provides for governmental liability commensurate with that of private parties, its waiver of immunity is far from absolute; many important classes of tort claims are excepted from the Act's coverage. *Grammatico*, 109 F.3d at 1200 (citing *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808, 104 S.Ct. 2755, 2761–62, 81 L.Ed.2d 660 (1984)). At issue in the immediate case is the discretionary function exception, which provides that the FTCA shall not apply to:

Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or *based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty* on the part of a federal agency or

an employee of the Government, whether or not the discretion involved be abused. 28 U.S.C. § 2680(a) (emphasis added). This exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *Varig Airlines,* 467 U.S. at 808, 104 S.Ct. at 2762. It was Congress' belief that imposing liability on the government for the discretionary acts of its employees "would seriously handicap efficient government operations." *Id.* at 814, 104 S.Ct. at 2765 (internal quotations omitted).

■ Whether the discretionary function exception bars suit against the United States in a given case depends on two factors. *See Maas v. United States,* 94 F.3d 291, 297 (7th Cir.1996) (citing *Rothrock v. United States,* 62 F.3d 196, 198 (7th Cir.1995)). First, a discretionary act must be involved. In other words, the act for which liability is sought to be imposed must involve "an element of judgment or choice." *United States v. Gaubert,* 499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991) (internal quotations omitted); *see also Rothrock,* 62 F.3d at 198. Therefore, if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," the discretionary function exception does not apply. *Gaubert,* 499 U.S. at 322, 111 S.Ct. at 1273. Second, "even assuming the challenged conduct involves an element of judgment, it remains to be decided whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id.* "Because the purpose of this exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy ..., the exception protects only governmental actions and decisions based on considerations of public policy." *Id.* at 323, 111 S.Ct. at 1273; *see also Maas,* 94 F.3d at 296; *Rothrock,* 62 F.3d at 198.

■ In order to determine whether the BOP's decision not to separate Calderon and Perez involved a discretionary act, we must examine the statutes and regulations which govern the BOP's decision to discipline, or not to discipline, federal inmates. Central to this issue is 28 C.F.R. § 541, which is labeled "Inmate Discipline and Special Housing Units." This federal regulation assists in establishing the specific disciplinary procedures for addressing inmate misconduct and provides in relevant part as follows:

§ 541.10 Purpose and Scope.

(a) So that inmates may live in a safe and orderly environment, it is necessary for institution authorities to impose discipline on those inmates whose behavior is not in compliance with Bureau of Prisons rules. The provisions of this rule apply to all persons committed to the care, custody, and control ... of the Bureau of Prisons.

(b) The following *general principles* apply *in every* disciplinary action taken:

. . .

(2) Staff shall take disciplinary action *at such times and to the degree necessary* to regulate an inmate's behavior within the Bureau rules and institution guidelines and to promote a safe and orderly institution environment.

28 C.F.R. § 541.10 (emphasis added). Next, § 541.13 sets forth the prohibited acts by inmates for which disciplinary action must be taken. Among these prohibited acts are: "[t]hreatening another with bodily harm or any other offense", *id.* § 541.13, table 3, code 203, and "[e]xtortion," *id.* § 541.13, table 3, code 204. And finally, § 541.14 requires that "when [the] staff *witnesses* or has *reasonable belief* that a violation of Bureau regulations has been committed by an inmate, *and* when staff *considers informal resolution of the incident inappropriate* or unsuccessful, staff shall prepare an Incident Report and promptly forward it to the appropriate Lieutenant." *Id.* § 541.14(a) (emphasis added).

In the present case, none of the federal regulations cited above set forth a mandatory, non-discretionary disciplinary action which the BOP was *required to take* against Perez prior to his attack on Calderon. To the contrary, the cited regulations clearly give the BOP room for judgment in determining whether to sanction Perez. For example, § 541.10 does not specify any particular type of conduct BOP personnel are required to take with respect to inmate discipline. On the other hand, § 541.14 may require the BOP to issue an incident

report—which may ultimately lead to the imposition of a sanction under § 541.13. Such action is required, however, only when 1) the BOP personnel witness or have a reasonable belief that a BOP regulation violation has occurred; and 2) the BOP personnel determine that informal resolution is inappropriate. Thus, the decision whether a reasonable belief is present and whether to institute formal disciplinary procedures is left to the BOP's discretion.[1] *Cf. Pooler v. United States,* 787 F.2d 868, 871 (3d Cir. 1986) (quoting *Gray v. Bell,* 712 F.2d 490, 513 (D.C.Cir.1983)) ("Prosecutorial decisions as to whether, when, and against whom to initiate prosecution are quintessential examples of governmental discretion in enforcing the criminal law, and, accordingly, courts have uniformly found them to be immune under the discretionary function exception."). Moreover, Calderon presented no evidence that BOP personnel witnessed any violation of prison regulations or made any formal finding that Perez had actually committed any of the prohibited acts under § 541.13 prior to his assault on Calderon. Thus, the BOP's decision not to separate Calderon and Perez is properly classified as a discretionary act.

In addition to § 541, Calderon also asserts that 18 U.S.C. § 4042 establishes a non-discretionary duty of care that the BOP is required to undertake and thus, removes this case from the discretionary function exception. Calderon argues that the BOP breached this duty of care when it failed to take disciplinary action against Perez. Calderon's argument, however, is ineffective. Section 4042 provides, in relevant part, that "[t]he Bureau of Prisons under the direction of the Attorney General, shall ... provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042. While it is true that this statute sets forth a mandatory duty of care, it does not, however, direct the manner by which the BOP must fulfill this duty. The statute sets forth no particular conduct the BOP person-

nel should engage in or avoid while attempting to fulfill their duty to protect inmates. For Calderon's argument to be effective, he must demonstrate that § 4042 sets forth non-discretionary actions which the BOP personnel were required to undertake to protect Calderon. *Bailor,* 51 F.3d at 685. As it currently stands, Calderon's argument is, in reality, a negligence argument and thus, must fail because it does not address the prerequisite jurisdictional issues of the discretionary function exception. *See Miller v. United States,* 710 F.2d 656, 662 (10th Cir. 1983) (finding that the discretionary function exception serves as a jurisdictional prerequisite to suit, which the plaintiff must ultimately satisfy as part of his burden of establishing subject matter jurisdiction).

Since we have determined that the BOP's act involved discretion, we must now consider whether the discretion exercised by the BOP is the type of discretion which the exception seeks to protect. Specifically, we must determine whether the BOP's actions were based on considerations of public policy. *Gaubert,* 499 U.S. at 323, 111 S.Ct. at 1273–74. As the Supreme Court noted in *Gaubert,* however, we presume that the actions are grounded in public policy in cases where the statute or regulations allow the government agent to exercise discretion:

> [f]or a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime.

*Id.* at 324–25, 111 S.Ct. at 1274–75. A review of Calderon's complaint reveals that he has not presented any facts which would support a finding that the BOP's action not to take disciplinary action against Perez was based on grounds other than considerations of public policy. Instead, Calderon unconvincingly asserts that "policy judgment is not involved in day to day, hour to hour, minute to minute actions of correctional officers in patrolling

---

1. Calderon asserts that the "reasonable belief" standard for unwitnessed regulation violations should be interpreted as, "when a reasonable staff person would have had a belief that a violation occurred." Appellant's Br. at 32. We disagree with Calderon's view. As this Court has previously stated, "[i]f the discretionary function exception could be pierced by showing negligent acts in implementing the discretionary function, the exception would be no shield at all." *Cassens v. St. Louis River Cruise Lines,* 44 F.3d 508, 515 (7th Cir.1995).

the cell blocks of a prison such as FCI Oxford." Appellant's Br. at 29.

We disagree with Calderon's contention. It is clear that balancing the need to provide inmate security with the rights of the inmates to circulate and socialize within the prison involves considerations based upon public policy. *Cf. Bell v. Wolfish,* 441 U.S. 520, 547–48, 99 S.Ct. 1861, 1878–79, 60 L.Ed.2d 447 (1979) (holding that since problems that arise on the day to day basis of correctional facilities involve many complex issues, prison administrators should be afforded wide-ranging deference in implementing and executing their policies because their discretion is needed to preserve internal discipline and maintain institutional security).

 The Government further buttresses this position by offering the Declaration of Anthony Boyd, the Discipline Hearing Administrator at the North Central Regional Office, Kansas City, Kansas.[2] In short, Boyd's declaration illustrates that the BOP's decision whether to take disciplinary actions against an individual is a matter of public policy. In his declaration, Boyd discusses various considerations that factor into the BOP decision of whether to discipline an inmate. Some of the factors Boyd discusses are economic feasibility, disruption of an inmate's participation in rehabilitative programs, staff allocation, and overall security concerns. Declaration of Anthony Boyd, ¶¶ 7–17. Accordingly, we hold that the BOP's decision not to take disciplinary action against Perez was grounded in considerations of public policy.

Because we have determined that 1) the BOP's acts were discretionary, and 2) the actions of the BOP involved discretion grounded in public policy considerations, the discretionary function exception serves to protect the BOP from suit, even if the BOP abused its discretion or was negligent in the performance of its discretionary functions.

Accordingly, we AFFIRM the district court's decision.

**2.** We are permitted to include Boyd's declaration in our analysis because we "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. Federal Deposit Ins. Corp.,* 999 F.2d 188, 191 (7th Cir.1993) (quoting *Grafon Corp. v. Hausermann,* 602 F.2d 781, 783 (7th Cir.1979)).