NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 21, 2018[*]
Decided July 18, 2018

**Before**

JOEL M. FLAUM, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 17-1904

| | |
|---|---|
| CHRISTOPHER H. MCCOY, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 14-CV-1374 |
| UNITED STATES OF AMERICA, *Defendant-Appellee.* | Michael M. Mihm, *Judge.* |

## O R D E R

A prisoner attacked Christopher McCoy, a federal inmate, after officials at the Bureau of Prisons released him from protective custody. He sued the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1), contending that prison officials negligently responded to a threat to his safety. The judge granted the government's motion for summary judgment, concluding that the manner by which prison officials responded to the threat fell within the "discretionary function" exception to the government's waiver of immunity in the Act. We affirm because prison

---

[*] We agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

officials have discretion in deciding how best to protect prisoners, and no rule constrained that discretion in this case.

We consider the evidence in the light most favorable to McCoy and draw all reasonable inferences in his favor. *See Parrott v. United States*, 536 F.3d 629, 630–31 (7th Cir. 2008). McCoy is imprisoned for child pornography and sex offenses. When he arrived at the Federal Correctional Institution in Pekin, Illinois, in 2012, he was placed in the general housing population. Months later McCoy learned that his crimes had become known and that he faced a danger of attack because of them. A prison gang member warned McCoy that the gang had the paperwork describing his offenses and gave him two options: enter the prison's segregated housing unit or "face the consequences."

In response to this perceived threat, McCoy asked a lieutenant to place him in the segregated housing unit for protective custody. During an interview with that lieutenant, McCoy reported the gang member's threat and that someone had slipped papers detailing his child sex offenses under his cell door. The lieutenant placed McCoy in protective custody pending the outcome of a complete investigation into the threat. The Bureau of Prisons requires that when prison staff place an inmate in protective custody, "an investigation will occur to verify the reasons for [the inmate's] placement." 28 C.F.R. § 541.28(a). The lieutenant's report of his interview with McCoy correctly reflects McCoy's concern that his offense papers had been slipped into his cell. But it incorrectly states that McCoy told the lieutenant that no one had "actually threatened" him.

Two months later while McCoy remained in protective custody, another interview and report followed. The interviewing officer wrote that McCoy said he felt unsafe because his sex-offense papers were slipped under his door and that he had not been verbally threatened. McCoy does not remember telling the officer that he had not been verbally threatened, but he also does not deny that he told the officer that. A day later an officer assigned to verify McCoy's need for protection recommended that McCoy be returned to the general population. The officer reviewed the two interview reports and decided that "insufficient evidence … support[ed] [McCoy's] claims of protective custody" because he had not been threatened "directly." He recommended that McCoy be returned to the general population, and McCoy was.

Months later an inmate attacked McCoy after he refused the inmate's offer to "buy back" a "death warrant" placed on his head by inmates who knew of his child sex offenses. The prison treated McCoy's injuries, returned him to protective custody, and

investigated his need for protection. The investigator found the attacker had a document detailing McCoy's sex offenses and that a copy of this paper was posted in a common area. After interviews with McCoy and other inmates, the investigator concluded that McCoy's safety was in jeopardy. The officer recommended that the Bureau transfer McCoy to another institution, and it did.

This suit under the Federal Torts Claims Act followed. In the district court, the government invoked the "discretionary function" exception to the Act. This exception shields the government from liability for "an act or omission of an employee of the [g]overnment … based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the [g]overnment, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The exception is an affirmative defense, and to prevail on it, the government must establish two elements "beyond reasonable dispute." *Keller v. United States*, 771 F.3d 1021, 1023 (7th Cir. 2014); *Palay v. United States*, 349 F.3d 418, 427 (7th Cir. 2003). First, the act at issue must be discretionary rather than mandatory, involving judgment or choice. *Keller*, 771 F.3d at 1023. Second, the act must be based on considerations of public policy. *Id.* Only the first element is contested here.

The judge granted the government's motion for summary judgment. The government argued that housing and security decisions generally fall under the discretionary-function exception. It cited 18 U.S.C. § 4042(a)(3) (defining the Bureau's duty to protect inmates) and *Calderon v. United States*, 123 F.3d 947, 950 (7th Cir. 1997) (deciding that § 4042 does not set forth "particular conduct the [Bureau's] personnel should engage in or avoid while attempting to fulfill their duty to protect inmates"). McCoy responded that officers violated a duty to investigate the risk that he faced after the papers detailing his child sex offenses ended up, in his view, "in the hands of other inmates." The judge granted the motion and ended the suit for "lack of jurisdiction." The jurisdictional label was a misnomer. Because the exception is a defense to liability, not a jurisdictional bar, *Parrott*, 536 F.3d at 634, dismissal was on the merits.

On appeal McCoy challenges the entry of summary judgment, arguing that the discretionary-function exception does not apply. He is mistaken. McCoy first contends that the investigating officers violated § 4042(a)(3), which requires that the Bureau "shall" provide for inmate "protection." We have held, however, that the manner in which the government's employees carry out their duty under § 4042 is committed to their discretion. *Calderon*, 123 F.3d at 950. Federal corrections officers exercised that discretion here. They conducted two separate interviews of McCoy, asking him to

explain his concerns for his safety. He does not deny the second interviewer's account that he (McCoy) stated that no one had verbally threatened him. A third officer reviewed the two interview reports and, again exercising discretion, viewed them as containing "insufficient" evidence of a direct threat and inconclusive about the significance of the appearance of the offense papers under McCoy's cell door. These officers did not violate their duty under § 4042.

McCoy asserts that the officers were *required* to do more to find out who obtained his offense papers and put them in his cell, but he cites no authority that supports his assertion. He points to two federal statutes pertaining to management and treatment of sex offenders, 18 U.S.C. §§ 3621(f)(1)(A), 4081, but neither of these statutes restricts the discretion that § 4042 grants to prison officials who must protect sex offenders. McCoy also relies on the officials' duty under 28 C.F.R. § 541.28(a) to investigate whether an inmate should remain in protective custody. But this regulation does not mandate a particular method for investigating risks; it simply requires that "an investigation will occur," and one did. As we have observed, the investigation consisted of two separate interviews of McCoy and an evaluation of the two interview reports.

Finally, McCoy argues that he is entitled to a remand under *Keller,* where we vacated summary judgment for the United States because the record was insufficiently developed. 771 F.3d at 1026. But *Keller* is distinguishable. There the government's discovery objections resulted in a "scant record" that made it impossible for us to ascertain what regulations at the prison governed the employees who, the plaintiff believed, carelessly allowed him to be beaten. *Id.* at 1024–25. By contrast McCoy does not argue that any relevant prison rules are missing from the record. During discovery he sought policies covering "administrative transfers," and the government responded that the Bureau's "program statements" are in the prison's library. When McCoy replied that "some" policies were not there, the judge ordered the government to supplement its disclosures. McCoy never argued in the district court (in opposing summary judgment) or now on appeal that this ruling ordering the government to supplement discovery was inadequate.

The judgment of the district court is modified to reflect dismissal on the merits. As modified, the judgment is

AFFIRMED.