The Supreme Court's decision in Simmons does more to call into question the Seventh Circuit's treatment of the FTCA's exceptions as non-jurisdictional. In that case, the district court dismissed plaintiff's FTCA claim based upon the FTCA's discretionary function exception. Simmons , 136 S.Ct. at 1846. The plaintiff then brought a new lawsuit alleging constitutional violations, but the district court dismissed that lawsuit based upon the FTCA's judgment-bar provision. Id. The Supreme Court held that the judgment-bar provision does not apply to claims that are dismissed under § 2680's exceptions.
*863 Id. at 1850. In reaching this conclusion, the Court considered the language of the FTCA's "exceptions" section. After quoting § 2680's language, the Court stated: " '[S]ection 1346(b) of this title' is the provision giving district courts FTCA jurisdiction. And the 'Exceptions' to which those portions of the FTCA 'shall not apply' are 13 categories of claims[.]"[1] Id. at 1847 (quoting § 2680). The Supreme Court went on to note-without disagreement-that "[b]oth parties agree that district courts do not have jurisdiction over claims that fall into one of the 13 categories of 'Exceptions' because 'section 1346(b) of this title'-the provision conferring jurisdiction on district courts-does 'not apply' to such claims." Id. (emphasis added). According to the Government, this language implicitly recognizes that the FTCA's exceptions (including the contractor exception and discretionary function exception) are jurisdictional.
While the Government presents a serious argument, this Court is bound by a decision of the Seventh Circuit unless it is "powerfully convinced that the [Seventh Circuit] would overrule it at the first opportunity." Colby v. J.C. Penney Co. , 811 F.2d 1119, 1123 (7th Cir. 1987) (citing Olson v. Paine, Webber, Jackson & Curtis, Inc., 806 F.2d 731 (7th Cir. 1986) ); see also Price v. City of Chicago , 2017 WL 36444, at *6 (N.D. Ill. Jan. 4, 2017) (collecting cases). The Court has to be "almost certain that the higher court would repudiate the doctrine if given the chance to do so" before it can disregard a higher court's precedent. Olson v. Paine, Webber, Jackson & Curtis, Inc. , 806 F.2d 731, 734 (7th Cir. 1986) (citations omitted). Because the Supreme Court has not addressed the precise issue before the Court, the Government has not satisfied that demanding standard. Although dicta in Simmons supports the conclusion that the FTCA's exceptions are jurisdictional, the parties in Simmons did not dispute that point. This is likely because the Sixth Circuit-where the case originated-treats the FTCA's exceptions as jurisdictional. Himmelreich v. Fed. Bureau of Prisons , 766 F.3d 576, 580 (6th Cir. 2014) ("We have repeatedly taken the opposite view [as the Seventh Circuit], which is that we lack subject-matter jurisdiction over an FTCA claim if the discretionary-function exception applies in a given case." (citations omitted) ). The question before this Court therefore is outside the adversarial issues presented to the Supreme Court in Simmons . Although the Supreme Court likely would have addressed any jurisdictional problems sua sponte , the plaintiff in Simmons brought constitutional claims that did not require invocation of the FTCA. It therefore appears that the Supreme Court had no occasion to make an independent determination in regard to whether the FTCA's exceptions limited its jurisdiction.
Furthermore, since Wong and Simmons were decided, the Seventh Circuit has continued to treat the discretionary function exception as "a defense to liability, not a jurisdictional bar[.]" See, e.g. , McCoy v. United States , 731 F. App'x 524, 526 (7th Cir. 2018) (citing Parrott , 536 F.3d at 634 ). Thus, consistent with binding Seventh Circuit precedent, the Court will treat the FTCA exceptions at issue as claims-processing rules, not as jurisdictional bars.
*864 B. Contractor Exception
The Government further argues that the Court should dismiss Plaintiff's negligence claim against it because the FTCA-the only waiver of the United States' sovereign immunity in this case-specifically excludes acts or omissions committed by contractors. Under the FTCA, the government only is liable for torts "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b). Pursuant to § 1346(b), an "employee of the Government" includes "officers or employees of any federal agency * * * and persons acting on behalf of a federal agency in an official capacity [.]" 28 U.S.C. § 2671. However, the term "federal agency" is defined to exclude "any contractor with the United States." Id. ; see also Quilico v. Kaplan , 749 F.2d 480, 482-83 (7th Cir. 1984). "In applying [the] independent contractor exception to the waiver of immunity, a critical element in distinguishing an agency from a contractor is the power of the [government] to control the detailed physical performance of the contractor." Lipsey v. United States , 879 F.3d 249, 253 (7th Cir. 2018) (internal quotations omitted). Thus, the key question here is "whether [B.I.'s] day-to-day operations are supervised by the" Government. United States v. Orleans , 425 U.S. 807, 815, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976). Other relevant considerations include whether the Government has authority to make personnel decisions for the entity and whether the government controls the finances of the entity. Alinsky v. United States , 156 F.Supp.2d 908, 912 (N.D. Ill. 2001) (citing Peoples Gas Light & Coke Co. v. United States , 1990 WL 129359, at *4 (N.D. Ill. Aug. 27, 1990) ).
Here, the Government bases its argument that the independent contractor exception applies on (i) portions of the contract between the United States and B.I., and (ii) a declaration submitted by one of its deportation officers. "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [her] claim. Such documents may be considered by a district court in ruling on the motion to dismiss." 188 LLC v. Trinity Indus., Inc. , 300 F.3d 730, 735 (7th Cir. 2002) (quoting Wright v. Assoc. Ins. Cos. Inc. , 29 F.3d 1244, 1248 (7th Cir. 1994) ).
Under this standard, the Government recognizes that the declaration cannot be considered in ruling on its motion to dismiss under Rule 12(b)(6). [28, at 7 n.1.] The Government argues, however, that the Court can consider its contract with B.I. because it is referenced in Plaintiff's complaint and central to her claim. It is true that the contract is mentioned once in the amended complaint. [16, at ¶ 16 ("On and after January 12, 2015, through September 2015, the plaintiff complied with all check-in or reporting requirements as a participant in ISAP by appearing in-person at the Chicago office of ISAP operated by B.I. through a contract with defendant USA's ICE.").] But the contract is not central to Plaintiff's claim against the United States. Daugherty v. Univ. of Chicago , 2017 WL 4227942, at *4 (N.D. Ill. Sept. 22, 2017) (declining to consider document referenced once in complaint, where the document was not a copy of a written instrument upon which the action was based). Because the contract is not properly before the Court on a motion to dismiss under Rule 12(b)(6), the Government's motion to dismiss Plaintiff's FTCA claim pursuant to the contractor exception is denied.[2]
*865 Furthermore, the Government's argument that the independent contractor exception applies is based on the assumption that Plaintiff's claim against it entirely is based on misconduct by B.I. However, Plaintiff alleges that an employee of the United States visited Plaintiff's home and ignored her complaints.[3] [16, at ¶¶ 15, 18.] Plaintiff further alleges that removal of the monitoring device required action by ICE. Id. at ¶ 13. Thus, even assuming B.I. is an independent contractor, Plaintiff alleges misconduct on the part of the Government. See Cesar v. Achim , 2009 WL 2225414, at *2 (E.D. Wis. July 22, 2009) (denying motion to dismiss where plaintiff alleged that "employees of the United States * * * had personal involvement in the claims at issue"). Accordingly, the FTCA's contractor exception does not require dismissal of Plaintiff's claim against the Government.
C. Discretionary Function Exception
The Government also argues that Plaintiff's claim against it is barred by the FTCA's discretionary function exception, which prohibits any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The purpose of the "discretionary function exception" to the FTCA's grant of federal jurisdiction is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy." United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) , 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984).
"The exception is an affirmative defense, and to prevail on it, the government must establish two elements 'beyond reasonable dispute.' " McCoy , 731 F. App'x at 526 (quoting Keller v. United States , 771 F.3d 1021, 1023 (7th Cir. 2014) ; Palay v. United States , 349 F.3d 418, 427 (7th Cir. 2003) ). First, the Government conduct must involve "an element of judgment or choice[.]" United States v. Gaubert , 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991) ; see also Lipsey v. United States , 879 F.3d 249, 253-55 (7th Cir. 2018). Government conduct is not discretionary if it is subject to a mandatory federal statute, regulation, or policy that requires a specific course of action. Gaubert , 499 U.S. at 322, 111 S.Ct. 1267. Second, the judgment or choice must be "based on considerations of public policy." Id. at 323, 111 S.Ct. 1267 (quoting *866 Berkovitz v. United States , 486 U.S. 531, 537, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988) ). In determining whether particular government conduct can be said to constitute an exercise of policy judgment, courts look to "the nature of the actions taken and * * * whether they are susceptible to policy analysis." Id. at 325, 111 S.Ct. 1267.
If both prongs of the discretionary function test are met, the United States is shielded from liability, even if its actions were negligent or constituted an abuse of discretion. See id. at 323, 111 S.Ct. 1267 ; see also Hughes v. United States , 110 F.3d 765, 767 n.1 (11th Cir. 1997) ("Our concern under the discretionary function exception is not whether the allegations of negligence are true[.]"). While complaints typically do not address affirmative defenses, affirmative defenses may be raised in a motion to dismiss if "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." Brooks v. Ross , 578 F.3d 574, 579 (7th Cir. 2009) (citing United States v. Lewis , 411 F.3d 838, 842 (7th Cir. 2005) ).[4] If the allegations in a complaint leave open the possibility that a plaintiff's claimed injuries arose out of negligence having nothing to do with discretionary judgments, then it is inappropriate to grant a motion to dismiss the complaint based on the discretionary function exception.
For example, in Palay v. United States , the Seventh Circuit reversed a decision granting the defendant's motion to dismiss, explaining:
As for the broader alleged failure to protect Palay from inmate violence, we likewise cannot say that this failure necessarily arose from discretionary judgments rendered in furtherance of prison policy. Although Calderon makes clear that prison officials enjoy discretion in matters of inmate safety, we do not know at this juncture whether the actions (or inactions) leading up to the altercation in which Palay was injured involved judgment. Again, the government presumes that the circumstances that made the fight (and Palay's injury) possible were the result of discretionary decisions by prison officials charged with making such choices-for example, judgments about housing inmates affiliated with rival gangs in the same housing unit. Certainly, that is possible. But one can also imagine that negligence having nothing whatever to do with discretionary judgments enabled the fight to break out.
349 F.3d 418, 431 (7th Cir. 2003).[5] Here, *867 the Government argues that Plaintiff's claim-which is based upon ICE's initial decision to "have an ankle bracelet monitoring device placed on plaintiff" and alleged failure "to review at any time the necessity of plaintiff wearing" the electronic monitor-falls squarely within the discretionary function exception. [19, at 6-7.]
Plaintiff appears to concede that ICE's decisions regarding whom to detain and in what manner those detained should be monitored involve elements of judgment or choice-satisfying the first prong of the discretionary function exception. Plaintiff argues, however, that the government's alleged decision to do nothing in response to her complaints regarding the placement of the electronic monitor cannot satisfy the second prong of the discretionary function exception. Plaintiff alleges that employees working for ICE "did not review the need for [P]laintiff's placement in an ankle bracelet monitoring device[,]" [16, at ¶ 15], even though Plaintiff repeatedly complained "that the right ankle monitor was too tight and bulky, causing [P]laintiff numbness, pain, and difficulty walking." [Id. at ¶¶ 15-18.] Plaintiff further alleges that from March 2015 through September 2015-during her in-person appearances at the Chicago office of ISAP-she repeatedly requested that (1) her ankle monitor be replaced with a monitor that was not as tight and bulky, or (2) her ankle monitor be loosened or placed on her other ankle. Id. at ¶ 19. Yet nobody responded to Plaintiff's complaints until September 2015, when she finally was referred to a medical clinic to be evaluated. Id. at ¶¶ 20-21. Still, the first available appointment was on October 20, 2015. Id. at ¶ 21.
Based on these allegations, the Court is unable to determine whether the actions that allegedly resulted in Plaintiff's injuries reflected the exercise of policy judgments.[6] Although it is possible that this decision was the result of permissible policy judgments, it also is possible that the government simply ignored Plaintiff's repeated complaints without weighing relevant policy considerations. This case thus differs from the cases relied upon by the Government, in which the challenged conduct necessarily involved policy judgments. Moore v. United States , 2018 WL 1035872, at *3 (N.D. Ill. Feb. 22, 2018) (granting *868 judgment on the pleadings where plaintiff challenged the government's investigatory and enforcement actions); Linder v. McPherson , 2015 WL 739633, at *16 (N.D. Ill. Jan. 29, 2015) (granting motion to dismiss where plaintiff challenged prosecutorial actions). It therefore remains for Plaintiff's claims to be fleshed out through discovery before the Court can determine whether the discretionary function exception applies.
D. Interlocutory Appeal
Although the Court is treating the FTCA's exceptions as claims-processing rules-not jurisdictional limits-the Court recognizes that there is substantial ground for difference of opinion regarding whether the FTCA's exceptions are jurisdictional in light of recent Supreme Court cases, as discussed above. Accordingly, the Court invites the parties to consider whether the following question may be appropriate for certification for interlocutory appeal pursuant to 28 U.S. Code § 1292(b) :
Whether the exceptions to the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., found in Chapter 171 of the Act-including the independent contractor exception under § 2671 and the discretionary function exception under § 2680(a) -are claims-processing rules or jurisdictional limits.
In raising this issue, the Court remains uncertain whether a ruling on this controlling question of law will materially advance the ultimate termination of the litigation (an issue the parties have yet to address), which is a prerequisite to certification for appeal under § 1292(b). Based on the information currently before the Court, it appears that-even if the exceptions to the FTCA were considered jurisdictional-some discovery would be necessary to determine whether the discretionary function exception applies. For example, it is unclear how Plaintiff could determine whether the government action or inaction in this case was based on policy considerations otherwise. Discovery also may be necessary to determine whether the contractor exception applies. Although the Government relies heavily on its contract with B.I. to argue that it was not involved in B.I.'s day-to-day operations [see 21, at 6-7; 28, at 7], the provisions of the contract cited to by the Government do not conclusively establish that point. For example, the Government does not cite any contractual provision negating Plaintiff's allegation that removal of the monitoring device required action by ICE. [16, at ¶ 13.] Furthermore, other provisions of the contract suggest that the Government may have been involved in certain aspects of B.I.'s day-to-day operations. See, e.g. , Contract No. HSCEDM-14-D-00004 between B.I. and United States available at https://www.ice.gov/doclib/foia/contracts/biIncorporatedHSCEDM14D00004.pdf, at 103-105, 120-121 (identifying detailed descriptions regarding the qualifications and responsibilities for contractor personnel, as well as specific training requirements for case specialists and management staff).
Still, the affidavit that the Government submitted in support of its motion to dismiss provides strong evidence that B.I. was acting as an independent contractor.[7] In that affidavit, Officer Morley avers that "[o]nce [Plaintiff] was enrolled in the monitoring program provided by B.I., ICE and its employees were not involved with or responsible for the placement or monitoring of the GPS ankle bracelet on [Plaintiff *869 ]." [19-1, at ¶ 12.] Officer Morley further avers that "ICE employees did not conduct any interviews with [Plaintiff], either in-person or by telephone, and ICE employees did not conduct any home inspections to verify [Plaintiff's] compliance with the supervised release order."[8] Id. Plaintiff argues, however, that the extent of ICE's involvement in Plaintiff's case cannot be determined without reviewing Plaintiff's entire file. The Court understands Plaintiff to be saying that even if the contractor exception is jurisdictional, some discovery would be necessary to determine whether the contractor exception applies.
Whether and to what extent jurisdictional discovery would be necessary if the FTCA's exceptions are treated as jurisdictional bears on whether a ruling on the controlling question of law identified above would materially advance the ultimate termination of the litigation. Whether any such discovery would overlap with discovery on the merits also would bear on that issue. The Court will consider any arguments on these points if any party moves for certification of the controlling question of law identified above (or a variation thereof) for interlocutory appeal pursuant to § 1292(b).
IV. Conclusion
For the reasons set forth below, the motion [18] is denied.[9] The case is set for further status on October 4, 2018 at 9:00 a.m.

The Court notes that the independent contractor exception is not one of the thirteen exceptions listed in 28 U.S.C. § 2680. Rather, it is an independent requirement found in 28 U.S.C. § 2671. However, both § 2680 and § 2671 are found in Chapter 171. Thus, to the extent that the thirteen exceptions listed in § 2680 are jurisdictional by way of the jurisdictional grant's reference to Chapter 171, the independent contractor exception also would be considered jurisdictional.

The Government argues that "even if the [C]ourt declines to consider the contract that the United States attached to the motion, the United States is also shielded from liability in this suit because of the application of the discretionary function exception" [28, at 7], implicitly recognizing that it is not shielded from liability under the contractor exception if the contract is excluded.

Although the Government submitted an affidavit averring that no ICE employee ever conducted home inspections to monitor Plaintiff's compliance with the conditions of her release [19-1, at ¶ 12], the Court cannot consider that evidence on the United States' motion to dismiss under Rule 12(b)(6). The Government also argues that its contract with B.I. requires that all home visits of ISAP participants be performed by B.I. [21, at 6 n.1]. Even if the Court were to consider this contractual language in ruling on the Government's motion to dismiss, the cited contractual provision provides that the contractor shall provide services-such as home visits-"when selected and assigned by ATD Officers on a case by case [sic] basis[.]" Contract No. HSCEDM-14-D-00004 between B.I. and United States of America, available at https://www.ice.gov/doclib/foia/contracts/biIncorporatedHSCEDM14D00004.pdf, at 110. It is not clear from this language that ICE relinquished all authority and ability to conduct home visits. The Court therefore cannot disregard Plaintiff's allegation that a person working for the government visited her home. [16, at ¶ 18.]

As the Seventh Circuit has noted, one might technically construe a motion to dismiss based on affirmative defense as a motion for judgment on the pleadings under Rule 12(c) rather than a motion to dismiss under Rule 12(b)(6). Brooks v. Ross , 578 F.3d 574, 579 (7th Cir. 2009). Regardless, the "practical effect is the same." Id. Rule 12(c) motions for judgment on the pleadings are reviewed under the same standard as Rule 12(b)(6) motions to dismiss for failure to state a claim. Buchanan-Moore v. County of Milwaukee , 570 F.3d 824, 827 (7th Cir. 2009) (citing Pisciotta v. Old Nat. Bancorp , 499 F.3d 629, 633 (7th Cir. 2007) ).

The Court recognizes that the Seventh Circuit has observed that the discretionary function exception cannot be pierced merely by showing negligent acts in implementing the discretionary function. Cassens v. St. Louis River Cruise Lines , 44 F.3d 508, 515 (7th Cir. 1995) ; see also Bailor v. Salvation Army , 51 F.3d 678, 685 (7th Cir. 1995) ("If it is determined that the actions of the Bureau of Prisons involved discretion, the discretionary function exception will serve to protect the government from suit, even if the Bureau of Prisons abused its discretion or was negligent in the performance of its discretionary functions"). However, in Palay , the Seventh Circuit distinguished between negligence in relation to policy decisions and negligence having nothing to do with policy judgments. 349 F.3d at 431. In fact, in distinguishing the Seventh Circuit's decision in Calderon v. United States , 123 F.3d 947 (7th Cir. 1997), the Seventh Circuit indicated that the discretionary function exception would not apply if prison officials simply ignored reported threats or forgot about them. Palay , 349 F.3d at 431 ("Unstated but implicit in Calderon is the assumption that prison officials in that case had taken note of the threats against the plaintiff in that case and weighed the relevant considerations in deciding how best to act (or not) in response to those threats. There is no hint, for example, that prison officials simply ignored the reported threats or forgot about them."). Based on the allegations in the complaint, the Court cannot exclude the possibility that the Government simply ignored Plaintiff's complaints without weighing any policy considerations.

To the extent Plaintiff challenges the initial decision to place her in an electronic monitoring bracelet, the Court agrees that such a decision necessarily would be "based on considerations of public policy." As noted by the Government, the authority of DHS and ICE to detain an alien pending removal proceedings is set forth in 8 U.S.C. § 1226(a), which provides the Secretary of Homeland Security with discretion over whether to detain non-citizens or release them on a bond or conditional parole pending a decision on whether they are to be removed from the United States. 8 U.S.C. § 1226(a) ; see also Mirmehdi v. United States , 689 F.3d 975, 984 (9th Cir. 2012) ("the decision to detain an alien pending resolution of immigration proceedings is explicitly committed to the discretion of the Attorney General"); Douglas v. United States , 796 F.Supp.2d 1354 (M.D. Fla. 2011) ("Operating with limited resources, ICE must weigh various policy considerations in deciding which suspected aliens to detain, how to detain them, and how to investigate claims of citizenship by detained aliens.").

Officer Morley's declaration avers that "ICE and DHS are not responsible for monitoring the day to day operations of [B.I.]" [19-1, at ¶ 6.] This conclusory assertion-supported only be general reference to the contract between B.I. and the United States-does nothing to support the Government's position.

Plaintiff notes that the Morley Affidavit states that ICE employees did not conduct any home inspections to verify her compliance with the supervised release order but does not rule out the possibility that ICE employees visited Plaintiff's home for other reasons. [20, at 8.] It is unclear, however, for what other purpose ICE employees would conduct a home visit.

In its supplemental brief, the Government requests that in the event the Court declines to consider its exhibits in ruling on its motion to dismiss, the Court convert its motion to dismiss to a motion for summary judgement under Federal Rule of Civil Procedure 56. [28, at 7 n.2.] Because Plaintiff has not had the opportunity to address whether summary judgment would be appropriate, the Court declines to do so at this time. This denial is of course without prejudice to any subsequent motion for summary judgment that the Government may file.